UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA
Miami Division

Case Number: 16-20827-CR-MORENO

UNITED STATES OF AMERICA,

   Plaintiff,

vs.

ERNESTO BOURZAC NIETO,

   Defendant.
_____/

## ORDER DENYING DEFENDANT'S MOTION FOR EARLY TERMINATION OF SUPERVISED RELEASE

THIS CAUSE came before the Court upon Defendant Ernesto Bourzac Nieto's Motion for Early Termination of Supervised Release (**D.E. 35**), filed on **September 30, 2024**. The Government did not file a response. However, Defendant represents that the assigned Probation Officer objects to the relief Defendant seeks. *See* Motion ¶ 11. The motion is now ripe for adjudication. For the reasons stated herein, it is

**ADJUDGED** that the motion is **DENIED**.

**I. BACKGROUND**

On October 27, 2016, the Government brought a two-count indictment against Defendant for (1) conspiracy to possess a controlled substance with intent to distribute, in violation of 21 U.S.C. § 846; and (2) possession of a controlled substance with intent to distribute, in violation of 21 U.S.C. § 841(a)(1). *See* Indictment, D.E. 7 at 1–2. The controlled substance at issue was cocaine. *See id.*

The Presentence Investigation Report ("PSR") lays out the offensive conduct. *See generally* PSR, D.E. 22. According to the PSR, on October 17, 2016, a credible confidential source provided a tip to U.S. Drug Enforcement Agency ("DEA") agents that Defendant planned to sell three kilograms of cocaine to a confidential informant. *Id.* ¶ 8. Armed with this information, DEA agents set up aerial surveillance of Defendant's home in Miami-Dade County. *Id.* The agents observed Defendant leave his home and enter a vehicle while carrying a plastic shopping bag large enough to carry kilograms of cocaine. *Id.* As Defendant drove away from his home, the agents followed until intercepting him at a nearby intersection. *Id.* With Defendant detained at the scene, the agents' search of Defendant's vehicle yielded a plastic shopping bag containing one kilogram of a white powdery substance. *Id.* A field test confirmed the presence of cocaine. *Id.* The agents then transported Defendant back to his home where he consented to a search and waived his *Miranda* rights in writing. *Id.* ¶ 9. Defendant led the agents to two additional kilograms of cocaine stashed inside his home, and Defendant revealed that he intended to sell the cocaine. *Id.* In total, agents seized 3.08 kilograms of cocaine from Defendant. *Id.* ¶ 10.

On December 13, 2016, Defendant pled guilty to the conspiracy charge, and the Government agreed to drop the possession charge after sentencing. *See* Plea Agreement, D.E. 18 ¶¶ 1–2. After considering the underlying facts, the factors set forth in 18 U.S.C. § 3553(a), the relevant mandatory statutory minimums, and the Sentencing Guidelines range of 60 to 63 months' imprisonment to be followed by four to five years of supervised release, this Court sentenced Defendant to five years in prison and five years of supervised release. *See* PSR ¶¶ 64–67; Sentencing Hearing Transcript, D.E. 33 at 6:24–7:5, 10:15–25; *see also* Judgment, D.E. 24 at 2–3. The terms of imprisonment and supervised release both fell within the Guidelines range. Upon

2

hearing the sentence, the Government made a motion in open court, requesting dismissal of the possession charge, which the Court granted. *See* Sentencing Hearing Transcript at 12:11–13.

Almost one year after the February 2017 sentencing hearing and the Court's entry of judgment, the Government filed a motion to reduce Defendant's sentence pursuant to Federal Rule of Criminal Procedure 35. *See* D.E. 27. The Government commended Defendant's cooperation and requested that his five-year term of imprisonment be reduced by six months, to four-and-a-half years. *See id.* ¶¶ 2–3; Rule 35 Motion Hearing Transcript, D.E. 34 at 3:24–4:6, 4:14–18. Defendant's attorney wanted more. Counsel asked for a one-year reduction (*see* Rule 35 Motion Hearing Transcript at 4:11), but the Government pushed back, citing Defendant's unwillingness to provide information on his family members' involvement. *See id.* at 4:18–5:2. The Court agreed with the Government's reasoning and reduced Defendant's term of imprisonment by six months. *See id.* at 7:16–8:2; *see also* Amended Judgment, D.E. 32 at 2. The supervised-release term remained unchanged.

In the instant motion, Defendant represents that he was released from custody and began serving his five-year term of supervised release "[o]n or about August 14, 2020." Motion ¶ 3. As of the date of this Order, Defendant has purportedly completed almost four years and five months of his five-year term. He now asks the Court to terminate the remainder of time he must serve, approximately seven months.

## II. LEGAL STANDARD

When considering whether to modify a term of supervised release, a district court must perform the analysis prescribed by Congress. *See* 18 U.S.C. § 3583(e). After first considering certain factors under § 3553(a), a district court may terminate a term of supervised release "if it

3

is satisfied that such action is warranted by the conduct of the defendant released and the interest of justice."[1] *Id.* § 3583(e)(1).

> The relevant § 3553(a) factors are: (1) the nature and circumstances of the offense; (2) the defendant's history and characteristics; (3) the need for deterrence; (4) the need to protect the public; (5) the need to provide the defendant with educational and vocational training, medical care, or correctional treatment; (6) the applicable guideline range; (7) any pertinent policy statements set forth by the Sentencing Commission; (8) the need to avoid unwarranted sentencing disparities; and (9) the need to provide restitution.

*United States v. Cordero*, 7 F.4th 1058, 1069 (11th Cir. 2021) (citing § 3583(e) and noting the cross-references to § 3553(a)).

Whether to grant relief under § 3583(e)(1) is discretionary. *United States v. Johnson*, 877 F.3d 993, 998 (11th Cir. 2017). And when a district court denies such relief, it must indicate that the specified § 3553(a) factors were "actually considered." *Id.* at 997. But the court "need not explain each factor's applicability, nor always explicitly articulate that it considered the factors." *Id.* at 998. Instead, the court's order and the record, taken together, "must indicate that the court considered the factors enumerated in the provision." *Id.* The Court supplements the record with its consideration of the relevant § 3553(a) factors below.

## III. DISCUSSION

When the Court sentenced Defendant in this case, it did so upon careful review of the statutory mandates and advisory Sentencing Guidelines range.[2] *See* Sentencing Hearing Transcript at 6:24–7:5. The Court was required by statute to sentence Defendant to a term of

---

[1] To be eligible for termination of supervised release, the statute requires that a defendant first serve a minimum of one year of supervised release. *See* 18 U.S.C. § 3583(e)(1). The Court notes that Defendant is statutorily eligible for such relief.

[2] "[A]voidance of unwarranted disparities was clearly considered by the Sentencing Commission when setting the Guidelines ranges. Since the District Judge correctly calculated and carefully reviewed the Guidelines range, he necessarily gave significant weight and consideration to the need to avoid unwarranted disparities." *United States v. Garcia Lopez*, 782 F. App'x 862, 865 (11th Cir. 2019) (alteration omitted) (quoting *Gall v. United States*, 552 U.S. 38, 54 (2007)).

4

imprisonment between five and 40 years. *See* PSR ¶ 64 (citing 21 U.S.C. § 841(b)(1)(B)(ii)). The Guidelines range was 60 to 63 months. *See id.* ¶ 65. The Court gave Defendant the minimum—five years. *See* Sentencing Hearing Transcript at 10:20–23; *see also* Judgment at 2. The Court was also required to sentence Defendant to a supervised-release term of at least four years. *See* PSR ¶ 66 (citing 21 U.S.C. § 841(b)(1)(B)(ii)). The Guidelines range for supervised release was four to five years. *See id.* ¶ 67. The Court gave Defendant five years. *See* Sentencing Hearing Transcript at 10:23–25; *see also* Judgment at 3. The Court believed—and still does—that the sentence it imposed is appropriate given the facts of this case and the § 3553(a) factors. *See* Sentencing Hearing Transcript at 10:15–17.

The prevalence of illicit drugs both in this District and throughout the United States is a serious problem. Notwithstanding the risks to users, the organizations and infrastructure responsible for maintaining and profiting from the drug trade are often built on violence and corruption. The Court is still mindful of this. Defendant acknowledged the seriousness of his crime and mostly cooperated with the Government, but deterrence would be ill-served if this were enough for a defendant to avoid punishment.

This is also not the first time Defendant has violated the law. The PSR reflects that in 1999, at age 37, Defendant was arrested for and charged with the unauthorized reception of communication services and carrying a concealed weapon. *See* PSR ¶¶ 29–30. An officer conducting a search of Defendant's vehicle at a traffic stop discovered a 14-inch machete under the floor mat, as well as several cable boxes and electronic chips used for stealing satellite television signals. *See id.* ¶ 29. More troubling, in July 2004, at age 42, Defendant shot a man twice, requiring him to be airlifted to a trauma center for surgery. *See id.* ¶ 27. Initially charged with attempted second-degree murder with a deadly weapon, Defendant pled guilty to several

crimes including aggravated battery, using a firearm to commit a felony, and carrying a concealed firearm. *See id*; Sentencing Hearing Transcript at 8:11–14, 8:19. Defendant's prison sentence was ultimately mitigated from 25 to three years, but this was only after he fled to and remained in Merida, Mexico from 2006 to 2008, and the Government extradited him. *See* PSR ¶¶ 27, 40; Sentencing Hearing Transcript at 8:19–21; Rule 35 Motion Hearing Transcript at 7:14–15. At sentencing, the Court expressed serious concern over these crimes. *See* Sentencing Hearing Transcript at 8:8–12. And though Defendant's counsel tried to alleviate these concerns—classifying the incident as "imperfect self-defense"—the Court's unease about Defendant's criminal history remained. *See id.* at 8:13–9:23.

Moving beyond Defendant's criminal history, the Court also revisits Defendant's upbringing, familial circumstances, job history, and immigration status. Defendant was born in Havana, Cuba to a mother and father with whom he had "an excellent relationship." PSR ¶ 35. Before their passing, his mother managed a supermarket, and his father was a high-ranking general and pilot in the Cuban army. *Id.* ¶¶ 35, 37. Defendant "experienced a 'good' upbringing. He was reared by his parents under middle-to-upper socioeconomic conditions in Cuba." *Id.* ¶ 37. Defendant lived in Cuba until illegally immigrating to the United States by raft with his former spouse and two sons in 1994. *Id.* ¶ 40. He was detained in Guantanamo Bay, Cuba, for approximately six months before settling in Miami in February 1995. *Id.* Other than the time he spent in Mexico after fleeing the United States, Defendant has lived in Miami since 1995. *See id.* Defendant has been married to his current wife since 2016 and "maintains a good and close relationship with his sons," both of whom live in Miami. *Id.* ¶¶ 38–39. In June 2013, Defendant transferred ownership of his home to his wife by quitclaim deed. *Id.* ¶ 40. Defendant has had periods of gainful employment throughout his adult life. At the time of Defendant's

shooting incident, he purportedly owned a business, though the Court was not presented with any specific information. *See* Sentencing Hearing Transcript at 9:4–8. While in Mexico from 2006 to 2008, Defendant owned and operated Bourzac Security Laminates, which sold anti-bullet and anti-hurricane laminates for homes. PSR ¶ 54. From 2011 to mid-2013, Defendant was a self-employed, full-time personal trainer with 20 to 30 clients. *Id.* ¶ 51. And from mid-2013 until October 2016, Defendant was employed as a full-time personal trainer at L.A. Fitness in Hialeah, Florida. *Id.* ¶ 50. At the time of sentencing, the PSR reflected that Defendant was in immigration removal proceedings. *Id.* ¶ 41.

In his motion, Defendant offers two principal grounds for early termination. First, he highlights his compliance with the Court's sentence, stating that he "has never violated any condition of his supervised release." *See* Motion ¶¶ 4–5. Second, Defendant cites his professional advancement and his current position, which requires him to travel in and out of state. *See id.* ¶ 7. In a letter submitted by Defendant to support his motion, Frank Romero, General Manager at YouFit Gym, Defendant's employer, praises Defendant's "outstanding performance" and highlights that Defendant has earned "several awards." *See* D.E. 35-1. Defendant argues that his post-imprisonment conduct demonstrates "successful reintegration into society" and that "the societal interest in his continued success outweighs the need to supervise him" for the remainder of his supervised-release term. *See* Motion ¶ 9.

The Court congratulates Defendant on his efforts to reintegrate and become a responsible, law-abiding member of society. It is certainly the Court's hope that Defendant continues his current trajectory. Nevertheless, the Court is not convinced that Defendant's actions signal his "successful reintegration" or that his accomplishments at work are enough to deter him from engaging in future criminal wrongdoing such that his term of supervised release should be

7

terminated early. Afterall, as the Court recounts above, Defendant owned a business during the 2004 shooting incident, and he committed the underlying offense while he was employed as a full-time personal trainer at L.A. Fitness. *See* Sentencing Hearing Transcript at 9:4–12; PSR ¶¶ 27, 49–50; *see also* Rule 35 Motion Hearing Transcript at 6:11–12 (Defendant's attorney referring to Defendant's cocaine dealing as a "side business" rather than "his main form of income").

Moreover, while the Court appreciates Defendant's compliance with the terms of his sentence, "[f]ull compliance, after all, is merely what is expected of all people serving terms of supervised release." *United States v. Freeman*, No. 05-60224-CR, 2023 WL 7036343, at *6 (S.D. Fla. Oct. 26, 2023) (citation omitted) (quoting *Karacsonyi v. United States*, No. 97-1220, 1998 WL 401273, at *1 (2d Cir. June 10, 1998)).

## IV.   CONCLUSION

After carefully considering the specified § 3553(a) factors and the grounds for relief Defendant provides in the instant motion, the Court concludes that neither Defendant's conduct nor "the interest of justice" warrants early termination of supervised release. *See* 18 U.S.C. § 3583(e)(1). Accordingly, it is

**ADJUDGED** that Defendant's Motion for Early Termination of Supervised Release (D.E. 35) is **DENIED**.

DONE AND ORDERED in Chambers at Miami, Florida, this _3rd_ of January 2025.

_____
FEDERICO A. MORENO
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record